UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-cr-00418-SRC |
| | ) |
| MICHAEL ANDERSON, | ) |
| | ) |
| Defendant. | ) |

## Order

Michael Anderson moves to suppress evidence seized during a traffic stop on April 10, 2024.  Doc. 27.  Anderson claims that the "search occurred (1) following an unlawfully prolonged traffic stop; (2) without valid consent; and (3) absent any application exception to the warrant requirement."  *Id.* at 1 (The Court cites to page numbers as assigned by CM/ECF.).  As such, Anderson claims the search violated his rights under the Fourth Amendment and, as a result, the Court must suppress any evidence seized.  *Id.*

I.      **Procedural background**

The Court referred Anderson's motion to United States Magistrate Patricia L. Cohen pursuant to 28 U.S.C. § 636(b).  On July 15, 2025, Judge Cohen issued a Report and Recommendation, recommending that the Court deny Anderson's motion.  Doc. 59.  Anderson filed objections to the R&R, doc. 69, the United States responded to Anderson's objections, doc. 70, and Anderson filed a reply, doc. 81.  Additionally, Anderson sought leave to supplement his motion to suppress, or in the alternative, have the Court reset his deadline for filing pretrial motions.  Doc. 80.  Judge Cohen denied Anderson's request on October 7, 2025.  Doc. 83.

## II.  Standard

When a party objects to a magistrate judge's R&R, the district judge must conduct a de novo review of the portions of the report, findings, or recommendations to which the party objected.  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)).  In making its de novo determination, the Court reviewed the record related to Anderson's motion.

## III.  Discussion

Anderson makes two objections to the R&R.  *See* doc. 69.  First, Anderson objects to the R&R's finding that Officer Thalhammer observed furtive movements.  *Id.* at 1–2.  Second, Anderson objects to the R&R's conclusion that reasonable suspicion allowed officers to extend the stop past its mission.  *Id.* at 2–4.  The Court addresses both objections below.

### A.  The R&R's finding that Officer Thalhammer observed furtive movements.

Anderson claims that the R&R errs by "credit[ing] Officer Thalhammer's testimony that he saw Mr. Anderson make 'furtive moments [sic]' while approaching a Mitsubishi Montero in which Mr. Anderson was seated." *Id.* at 1.  Anderson claims the R&R fails to account for the Montero's tinted windows and the dimly lighted area.  *Id.* at 1–2.

Defense counsel inquired about Officer Thalhammer's ability to see Anderson's movements at the evidentiary hearing:

> [Defense counsel:]       You flash your flashlight into the backseat on the video.
>
> [Officer Thalhammer:]    Correct.
>
> [Defense counsel:]       Is it fair to say that this is because the windows are tinted pretty darkly?
>
> [Officer Thalhammer:]    I would say the windows are tinted.

2

> [Defense counsel:]   There is no dome light on inside the car?
>
> [Officer Thalhammer:]   No, but you can still see inside.

Doc. 49, Evid. Tr at 32:6–32:12. Officer Thalhammer agreed with defense counsel that the vehicle's windows were tinted but confirmed that he was still able to see inside the vehicle using his flashlight. *See id.* Ultimately, the R&R credited Officer's Thalhammer's testimony. *See* doc. 59 at 7.

Officer Thalhammer testified that "as [h]e started speaking to the driver, [he] shined [his] flashlight in the rear driver's side window and then [he] saw [Anderson] tucking his hands to the right side of his body making multiple furtive movements." Doc. 49, Evid. Tr. at 16:13–16:17. Exhibit 4 reflects that Officer Thalhammer shined his flashlight into the rear driver's side window while speaking to the driver. Ex. 4 at 00:56–1:09. Additionally, Exhibit 4 generally shows that the vehicle pulled over in front of a Hampton Inn that had numerous outside lights.

Officer Thalhammer asked the driver to exit the vehicle, and the driver was arrested for driving on a suspended license and having outstanding warrants. Doc. 49, Evid. Tr. at 17:6–12, 28:13–28:15, 64:17–19. While arresting the driver, Officer Thalhammer told Officer Burton that Anderson was "acting weird." Ex. 4 at 01:50–01:59. When asked what he meant by "acting weird" at the evidentiary hearing, Officer Thalhammer testified that Anderson made "furtive movements to his right side, and using [his] knowledge and experience, that is suspicious behavior usually trying to hide contraband." Doc. 49, Evid. Tr. at 17:23–17:25.

Officer Thalhammer returned to the vehicle, asking Anderson and the female occupant to place their hands on the seats in front of them. Ex. 4 at 02:04–02:11. Officer Thalhammer testified that he does not "like a lot of hand movements around due to past experiences with firearms and contraband." Doc. 49, Evid. Tr. at 19:5–6. During the investigation, Officer Thalhammer asked Anderson multiple times if he had any weapons, which he denied at first, but

3

later failed to respond to the question. *Id.* at 19:16–19, 21:18–25. Officer Thalhammer testified that he removed Anderson from the vehicle and placed him in handcuffs for safety reasons. *Id.* at 22:15–23:2. After determining Anderson's identity, Officer Thalhammer learned that Anderson was a convicted felon and searched his bag, which was located on Anderson's right side. *Id.* at 23:16, 24:24–25:14. Officer Thalhammer located a firearm and narcotics in the bag. *Id.* at 26:8.

Having reviewed the record, the Court finds that the R&R correctly found Officer Thalhammer's testimony credible and overrules Anderson's objection, doc. 69 at 1–2.

### B. The R&R's conclusion that reasonable suspicion allowed officers to extend the traffic stop.

Anderson next claims that the R&R errs in deciding that reasonable suspicion allowed officer to extend the stop. Doc. 69 at 2–4. Anderson relies on *United States v. Fickas*, No. 21-CR-160 (WMW/LIB), 2022 WL 1479764 (D. Minn. Feb. 11, 2022), *report and recommendation adopted*, No. 21-CR-0160 (WMW/LIB), 2022 WL 1090885 (D. Minn. Apr. 12, 2022). While *Fickas* is not binding on this Court, the Court will nevertheless address it.

As the R&R points out, *Fickas* addressed whether "furtive movements" justified the initial stop, not, as here, the extending of an admittedly lawful stop. 2022 WL 1479764, at *4–5. The *Fickas* court ultimately found that the officer's "generic description of 'furtive movements' [was] insufficient to establish a reasonable, articulable suspicion under the circumstances." *Id.* However, the *Fickas* Court did find that the officer had a reasonable, articulable suspension to initiate the stop because the officer "had an objectively reasonable basis to believe that the male driver was [an individual named Justin Lemmons] who was in violation [of] a Minnesota state court Domestic Abuse No Contact Order, and Mr. Lemmons was driving the Acadia with a revoked driver's license." *Id.* at *7.

4

Because the officer realized that the driver was not Mr. Lemmons while walking up to the Acadia, the *Fickas* court found that he could not expand the scope of the investigation. *Id.* at *9. As a result, the officer needed "an additional, separate factual basis upon which to find reasonable, articulable suspicion of a different offense in need of further investigation," which did not exist. The *Fickas* court granted "suppression of all evidence obtained <u>after</u> [the officer] realized the scope of his initial investigatory stop was ended because the male driver was not Mr. Lemmons." *Id.* at *12 (emphasis in original).

Here, "Anderson does not challenge the original basis for the stop." Doc. 52 at 4. Instead, he challenges the extension of the stop. Doc. 69 at 2–4. Having reviewed the record, the Court finds that the R&R correctly found multiple reasons for extending the traffic stop, including:

> (1) the abrupt and hasty exit of the front seat passenger and his flight from the scene; (2) an early morning stop of a car that had been stopped an hour previously in a high crime area; (3) [Anderson's] movements in the car towards his right side, as if he were trying to conceal items; (4) [Anderson's] nervousness; (5) [Anderson's] failure to answer a direct question about possession of weapons; and (6) [Anderson's] mismatched Social Security number and claim of Missouri birthplace.

Doc. 59 at 7. Given the totality of the circumstances, the Court agrees that "the officers were justified in extending the stop based on reasonable suspicion of criminal activity." *See id.* at 7. As such, the Court overrules Anderson's objection, doc. 69 at 2–4.

## IV.    Conclusion

Accordingly, the Court (1) overrules Anderson's [69] objection, (2) sustains, adopts, and incorporates Judge Cohen's [59] Report and Recommendation, and (3) denies Anderson's [27] Motion to Suppress.

So ordered this 21st day of October 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE